**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

OSTERIA SEGRETO, LLC d/b/a THE
BARBER SHOP BLACKSTONE,

              Plaintiff,

    vs.

MICHAEL HILGERS, Attorney General
of Nebraska, in his official capacity, and
TARA J. STERNS, JOSEPH A.
SCOVILLE, AND COURTNEY A.
DAUBENDIEK, in their official capacities
as the members of the Nebraska Board of
Barber Examiners,

              Defendants.

CASE NO. ____

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND DECLARATORY RELIEF**

## INTRODUCTION

1.    Several years ago, Mike DiGiacomo and his two siblings purchased a building in Omaha's Blackstone District from their parents. The building has deep familial roots. Mike's father purchased the building in 1977 and operated his hair-cutting business there for more than 30 years. As children, the DiGiacomo siblings spent their formative years in the space—listening to customers' stories and helping around the family business.

2.    The family's building has a main floor and a basement. Initially, the DiGiacomo siblings converted the basement to an Italian speakeasy called Osteria Segreto, meaning "hidden tavern" in Italian. But early last year, they changed to a new concept with similar familial roots—a barber shop themed bar. To pay tribute to their late father, and the countless barbers who worked in the building over the decades, they named the bar "The Barber Shop Blackstone."

3.     The bar, like the speakeasy, is intentionally discreet. To access the bar, patrons enter though a back-alley door tucked between a wall and a wood fence adorned with a small barber pole. Once inside, patrons order from a menu that reflects the building's long history of hairstylists and barbers. Drinks include the "Scotch and Scissiors," the "Classic Cut Old Fashioned," and the "Barber's Flight."

4.     The Barber Shop Blackstone is unequivocal in advertising itself as a bar. Although the bar does not have any front-facing signage, its social media account advertises its "carefully curated cocktails."



5.     Its advertising furthers one message—this is a bar.

6.     But soon after opening the bar, the DiGiacomo siblings, through their LLC, received letters from Nebraska's Board of Barber Examiners (the "Barber Board") alleging violations of state law. Specifically, the Board is threatening the bar with civil and criminal penalties if it does not change its name and remove or alter the decorative barber poles from its property. The Barber Board claims that the business is operating in violation of the Nebraska Barber Act, NEB. REV. STAT. § 71-201 *et seq.*, which prohibits businesses from using the title of "barber" or "barber shop" without a state-issued license.

7.      The Barber Board's attempted enforcement of the Barber Act against The Barber Shop Blackstone hinders its ability to market itself and maintain the overall theme of the bar. Because the impending enforcement of the statute violates The Barber Shop Blackstone's constitutional rights under the First and Fourteenth Amendments, it is entitled to immediate declaratory and injunctive relief. The Barber Shop Blackstone brings this action against the Defendants to challenge threatened restrictions of its protected commercial speech rights.

## PARTIES

8.      Osteria Segreto, LLC d/b/a The Barber Shop Blackstone is a limited liability company organized under the laws of the State of Nebraska, with its principal place of business located 900 S. 74th Plaza, Suite 303, Omaha, NE 68114.

9.      Defendant Michael Hilgers is the duly elected Attorney General of Nebraska whose office is charged with carrying out the laws of the State.

10.     Defendant Tara J. Sterns is the duly appointed President of the Nebraska Board of Barber Examiners who is charged with administering, investigating, and enforcing the provisions of the Barber Act and has authority to bring suit on behalf of the State of Nebraska for violations of the Barber Act. Defendant Sterns is a resident of Lincoln, Nebraska.

11.     Defendant Joseph A. Scoville is the duly appointed Vice-President of the Nebraska Board of Barber Examiners who is charged with administering, investigating, and enforcing the provisions of the Barber Act and has authority to bring suit on behalf of the State of Nebraska for violations of the Barber Act. Defendant Scoville is a resident of Omaha, Nebraska.

12.     Defendant Courtney A. Daubendiek is a duly appointed member of the Nebraska Board of Barber Examiners who is charged with administering, investigating, and enforcing the provisions of the Barber Act and has authority to bring suit on behalf of the State of Nebraska for violations of the Barber Act. Defendant Daubendiek is a resident of Beatrice, Nebraska.

## JURISDICTION AND VENUE

13.    This action is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. The Parties have a justiciable controversy and Plaintiff seeks a ruling that will terminate the controversy.

14.    This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 because it involves a federal question under 42 U.S.C. § 1983.

15.    The Court has specific personal jurisdiction over the defendants because all defendants reside and may be found in Nebraska.

16.    Venue is proper under 28 U.S.C. § 1391 because the defendants reside in Nebraska and the challenged conduct occurred entirely within Nebraska.

## FACTUAL ALLEGATIONS

### A. The Barber Shop Blackstone.

17.    In February 2025, The Barber Shop Blackstone applied for and received approval from the Nebraska Secretary of State for the use of the trade name "The Barber Shop Blackstone." The application described the general nature of the business as a "bar that serves alcohol only." The bar opened the following month.

18.    The bar's logo is a monochromatic barber pole with the name "The Barber Shop." It contains the tag line, "Where the Buzz is Real."



19.    To get into the bar, patrons enter a small anteroom. They then see a lone vintage barber chair, a barber pole, and small television that displays a history of

barbering. A bouncer greets customers, checks their IDs, and allows them through a hidden door into the bar.

20.    Inside, patrons access a bar that sits at the front of the long but narrow space. Opposing the small bar are high-top tables that run the length of the venue. The walls are filled with historical pictures of barbers and barbering tools. The bar is dimly lit, but at the end of the narrow space is a small seating area next to a floor-to-ceiling light installation designed to mimic the banded lights of a barber pole.

## B. The Barber Board demands changes.

21.    Within a month of rebranding, the Barber Board sent The Barber Shop Blackstone a letter alleging violations of the Nebraska Barber Act. A true and correct copy of this letter is attached as Exhibit "A."

22.    In response, Mr. DiGiacomo informed the Barber Board that he does not provide, nor intend to provide, barber services. He also wrote, "We are a cocktail bar—not a personal grooming establishment—and no reasonable person would expect to get a haircut or shave from our staff." A copy of Mr. DiGiacomo's response to the Barber Board is attached as Exhibit "B."

23.    A few months later, the Barber Board sent a second demand to The Barber Shop Blackstone. This letter, like the first, alleges violations of the Barber Act. It also includes vague allegations regarding the Uniform Deceptive Trade Practices Act, NEB. REV. STAT. § 87-301 *et seq.*, and purported infringements of the Barber Board's protected trademark.

24.    The Barber Board's second letter contains additional threats of criminal and civil consequences because of (1) the bar's use of the title "barber shop," and (2) its display of decorative barber poles. The letter ends,

> We reiterate that violations of the Barber Act carry both civil and criminal consequences. Litigation can be an expensive and time-consuming process. The Board is obligated to defend the Barber Act and its trademark. If we do not receive a response shortly, the Board will initiate legal proceedings.

A true and correct copy of this letter is attached hereto as Exhibit "C."

25.     In response to threats of criminal and civil punishment, Mr. DiGiacomo agreed to meet with the Barber Board to discuss possible solutions. At the meeting was a member of the Barber Board and an assistant Attorney General.

26.     Fearful of "expensive and time consuming" litigation, Mr. DiGiacomo initially agreed to change the bar's name and re-coloring the barber poles. The Barber Board told him they needed final approval over any name change despite no legal authority for that demand. The Barber Board also affirmatively suggested to Mr. DiGiacomo that he change the name to "The Bar-Bar," which the Board ultimately approved at an October 2025 meeting.

27.     Earlier this month, on February 6, the Barber Board sent another message to Mr. DiGiacomo regarding The Barber Shop Blackstone. Again, the Barber Board reiterated its position regarding the bar's name and barber poles. A true and correct copy of the February 6, 2026, email is attached hereto as Exhibit "D."

28.     These ongoing threats of civil and criminal enforcement violate The Barber Shop Blackstone's First Amendment commercial speech rights.

## C. The Barber Shop Bar continues to operate as a bar and does not represent itself as a place of barbering.

29.     The purported purpose of the Nebraska Barber Act is to prevent unlicensed barbers from engaging in the practice of barbering to further the interest of public health, safety, and the general welfare; however, none of these interests are implicated here. The Barber Shop Bar does not engage in the practice of barbering as defined by the Nebraska Barber Act. NEB. REV. STAT. § 71-202.

30.     The Barber Shop Blackstone is a bar. It does not hold itself out as a barber shop. For example,

a. There is no signage indicating the bar's existence other than a lone barber pole tucked in the alley behind Blackstone Social.

b. The hours of operation are consistent with those of a bar rather than a barber shop. The bar opens at 7:00 p.m. on Wednesdays, and 5:00 p.m.

Page **6** of **10**

Thursday through Sunday. On those days, the bar closes at 2:00 a.m., and it is not open either on Mondays or Tuesdays.

c. The bar's website makes clear that it is a bar and not a barber shop. The bar's website says "[w]elcome to the Barber Shop, where every drink tells a story" and describes itself as "a hidden gem, a lively high-energy bar tucked behind the façade of a classic barbershop." If that's not enough, the URL for its website is "thebarbershop.bar."

d. The Barber Shop Blackstone's social media is also unequivocal in advertising itself as a bar. The first Instagram post advertising its grand opening provides a video tour of the space with the caption "[t]he Barbershop will be cutting up cocktails all night long."

e. Facebook tells a similar story—again restating the website's welcome message of a place "where every drink tells a story."

f. Finally, a simple Google search of "The Barber Shop Blackstone" makes clear that the business is a bar and not a place of barbering.

31. The Barber Shop Blackstone does not and is not likely to create an impression with the public that it is authorized to engage in the practice of barbering. The bar has never offered nor represented to anyone that it is qualified to offer professional barbering services.

32. The Barber Shop Blackstone has never had an instance where a member of the public believed that it offered professional barbering services. It is not aware of any instance involving citizens of the State of Nebraska where anyone believed or was under the impression that the bar provided or offered to provide professional barbering services.

33. The bar is not aware of any way its use of the trade name "The Barber Shop Blackstone" or the display of a barber pole, either in physical form or through its logo and online advertisement, detracts from the State's protection of the public health, public safety, and general welfare.

34.     The bar is not aware of any way its use of the trade name "The Barber Shop Blackstone" or the display of a barber pole, either in physical form or through its logo and online advertisement, negatively affects the skilled trade of barbering and the operation of barber shops throughout the State of Nebraska.

## FIRST CAUSE OF ACTION
### Unlawful Restriction of Free Speech in Violation of the First Amendment of the U.S. Constitution (through 42 U.S.C. § 1983)

35.     Plaintiff re-alleges and incorporates the preceding paragraphs.

36.     The Barber Shop Blackstone engages in activity protected by the First Amendment by, among other ways, using its trade name The Barber Shop Blackstone, displaying a physical barber pole at the secluded entrance to the bar, displaying a barber pole within the bar, and using a barber pole in its logo that is displayed both within the bar and in advertisements.

37.     The Barber Board seeks to prevent The Barber Shop Blackstone from using the name "barber shop" and displaying a barber pole in its current form, preventing the bar from marketing itself effectively and promoting itself through a unified theme both within the bar and in advertisement.

## SECOND CAUSE OF ACTION
### Declaratory Judgment (through 28 U.S.C. § 2201)

38.     Plaintiff re-alleges and incorporates the preceding paragraphs.

39.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, states in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). As illustrated by the Barber Board's letters and under controlling authority, the Parties to this action have an actual and justiciable controversy.

40. Specifically, The Barber Shop Blackstone contends that the Barber Board's attempts to force the bar to rename itself, remove all barber poles as currently designed from the property, and any barber poles in advertising violates the bar's rights of commercial free speech guaranteed by the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment. *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 561–66, 100 S. Ct. 2342, 2349–51 (1980).

## REQUEST FOR RELIEF

The Barber Shop Blackstone respectfully requests an order from this Court:

41. Declaring that The Barber Shop Blackstone's use of "Barber Shop" in its trade name is a proper and valid use under its commercial speech rights and any attempt by the Barber Board to prevent this use is an improper exercise of its state police powers.

42. Declaring that The Barber Shop Blackstone's display of barber poles as currently designed on its property is a proper and valid use under its commercial speech rights and any attempt by the Barber Board to prevent their use is an improper exercise of its state police powers.

43. Declaring that The Barber Shop Blackstone's use of a barber pole in its logo and advertising is a proper and valid use under its commercial speech rights and any attempt by the Barber Board to prevent this use is an improper exercise of its state police powers.

44. Declaring that the Barber Act is unconstitutional as applied to The Barber Shop Blackstone.

45. Permanently enjoining and restraining the Defendants and their members, agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or concert or participation with any of them from interfering with The Barber Shop Blackstone's current use of the title "Barber Shop" or use or display of a barber pole.

46.    Awarding Plaintiff attorney fees and costs under 42 U.S.C. § 1988 for the prosecution of this action.

DATED this 17th day of February, 2026.

　　　　　　　　　　　　　　　*/s/ Daniel J. Gutman*　　　　　　
Daniel J. Gutman, #26039
Sydney L. Hayes, #27051
University of Nebraska College of Law
First Amendment Clinic
Schmid Clinic Building
P.O. Box 830902
Lincoln, NE 68583-0902
dgutman2@unl.edu
shayes6@unl.edu

ATTORNEYS FOR PLAINTIFF
OSTERIA SEGRETO, LLC d/b/a THE
BARBER SHOP BLACKSTONE