**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| OSTERIA SEGRETO, LLC d/b/a THE BARBER SHOP BLACKSTONE<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL HILGERS, Attorney General of Nebraska, in his official capacity, and TARA J. STERNS, JOSEPH A. SCOVILLE, AND COURTNEY A. DAUBENDIEK, in their official capacities as the members of the Nebraska Board of Barber Examiners<br><br>Defendants. | CASE NO. 8:26-CV-00065<br><br><br>**BRIEF IN SUPPORT OF THE BARBER SHOP BLACKSTONE'S MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Before it was a bar, Blackstone Social was a hair salon. The salon was operated by Don DiGiacomo, owner of Decomo's Hair Fashions. For nearly thirty years, Mr. DiGiacomo brought life to the building, converting an old office space to a cornerstone of Omaha's Italian community. The salon was more than a place to get a haircut; it was a social hub where people gathered to share stories and build relationships.

Years after the salon closed, Mr. DiGiacomo's son, Mike DiGiacomo, and his two siblings purchased the building from their parents. In 2017, the siblings converted the building's lower level to a bar. Initially, the bar was an Italian speakeasy called Osteria Segreto, meaning "hidden tavern" in Italian. But early last

year, they changed the bar to a new concept with similar familial roots—a barber shop themed bar. They named the bar "The Barber Shop Blackstone."

The bar pays tribute to Don DiGiacomo, his barber friends, and the countless people who frequented the salon over the years. The bar has a small anteroom with a vintage barber chair, a barber pole, and small television that repeats a historical video on barbering. Pictures of barbers and barbering tools adorn the walls. And on every high-top table sits a barber themed menu, offering specialized drinks including the "Scotch and Scissiors," the "Classic Cut Old Fashioned," and the "Barber's Flight."

No reasonable person could mistake the bar for a barbershop. And no one ever has. The bar, like the Italian speakeasy before it, is intentionally discreet. There is no front-facing signage. Instead, patrons enter though a back-alley door tucked between a wall and a wood fence adorned with a small barber pole. The bar's limited social media presence advertises "carefully curated cocktails," and its hours of operation are consistent with a bar, not a barbershop.

Yet the Nebraska Board of Barber Examiners ("Barber Board") continues to threaten the bar with criminal and civil penalties if it does not change its name and remove or alter its decorative barber poles. It cites a sweepingly broad provision of state law that prohibits non-licensed companies from using the tile "barber" or "barber shop" in advertising. Neb. Rev. Stat. § 71-201(5). The law also prohibits unlicensed companies from displaying "a barber pole" or "image of a barber pole" under threat of criminal and civil penalty. Neb. Rev. Stat. §§ 71-201(6), 220–220.01.

These provisions of state law run head-first into established First Amendment principles. Accordingly, The Barber Shop Blackstone seeks an Order declaring the provisions unconstitutional as applied to the specific facts and circumstances of this case. But given the Barber Board's persistent and ongoing threats of criminal and civil enforcement, more immediate relief is warranted. Specifically, the bar seeks a preliminary injunction preventing the Barber Board from pursuing civil or criminal action pending a final resolution on the merits. Because each *Dataphase* factor is satisfied, the bar's Motion for Preliminary Injunction should be granted.

## BACKGROUND

Early last year, The Barber Shop Blackstone applied for and received approval from the Nebraska Secretary of State for the use of the trade name "The Barber Shop Blackstone." (Ex. 1, Mike DiGiacomo Decl. ¶ 9.) The application described the general nature of the business as a "bar that serves alcohol only." (*Id.* ¶ 10)

Consistent with its application, the bar's online presence and advertising markets the establishment as a place to drink alcohol—not a place to get a haircut. The bar's logo is a monochromatic barber pole with the name "The Barber Shop," and it contains the tag line, "Where the Buzz is Real." (*Id.* ¶ 18.) The bar's website says "[w]elcome to the Barber Shop, where every drink tells a story" and describes itself as "a hidden gem, a lively high-energy bar tucked behind the façade of a classic barbershop." (*Id.* ¶ 16.) The URL for its website is "thebarbershop.bar." (*Id.* ¶ 17.)

Finding the bar is difficult—intentionally so. There are no signs advertising the business. (*Id.* ¶ 20). To access the bar, patrons enter though a back-alley door

3

tucked between a wall and a wood fence adorned with a small barber pole. (*Id.* ¶ 23.) There, patrons encounter a vintage barber chair, a barber pole, and small television that displays a history of barbering. (*Id.* ¶ 24.) After a bouncer checks patrons' IDs, they are let through a hidden door into the bar. (*Id.* ¶ 25.) The menu pays tribute to the bar's heritage with drink names like "Scotch and Scissors," the "Classic Cut Old Fashioned," or the "Barber's Flight." (*Id.* ¶ 27.)

As noted above, the bar does not engage in the practice of barbering. (*Id.* ¶ 11.) Nor does it hold itself out as such. (*Id.* ¶ 12.) The bar has never had an instance where a member of the public believed that The Barber Shop Blackstone offered professional barbering services. (*Id.* ¶ 28.) Relatedly, the bar is unaware of any way its use of its trade name or the display of a barber pole, either in physical form or through its logo and online advertisement, negatively affects the skilled trade of barbering and the operation of barber shops throughout the State of Nebraska. (*Id.* ¶ 29.) Rather, as alleged extensively in the bar's Complaint, the barbershop theme merely pays homage to Don DiGiacomo, who previously owned the building where the bar now sits, and who ran a salon in the space decades ago. (*Id.* ¶ 8.)

Soon after the bar opened, it received a letter from the Barber Board alleging violations of Nebraska's Barber Act. (*Id.* ¶ 30.) A few months later, the Board sent a second letter with similar allegations. (*Id.* ¶ 31.) Both letters threaten criminal and civil enforcement if the bar does not immediately change its name and remove or alter decorative barber poles. (*Id.* ¶ 32.) In one letter, the Barber Board threatens that

4

"[l]itigation can be expensive and time consuming," and without a response, "the Board will initiate legal proceedings." (*Id.* ¶ 34)

One of the bar's owners, Mike DiGiacomo, initially agreed to meet with the Barber Board and work toward resolution. (*Id.* ¶ 35.) Although he wanted to maintain the name and theme of the bar, he could not afford the "expensive and time consuming" litigation threatened by the State. (*Id.* ¶ 36.) Accordingly, in a meeting with the Barber Board, DiGiacomo verbally agreed to consider different names, including "The Bar-Bar," a name suggested by the Barber Board. (*Id.* ¶ 37.) A Barber Board representative indicated that the Board's Commissioners would need to approve any proposed change. (*Id.* ¶ 38.)

Ultimately, the bar did not change its name or remove its decorative barber poles, as is its right under the First Amendment. That decision resulted in a third letter, received February 6, 2026, in which the Barber Board reiterated its position regarding the bar's name and barber poles. Each day brings added uncertainty and fear to the bar and its owners of criminal or civil enforcement. (*Id.* ¶ 41)

## LEGAL STANDARD

In determining whether to issue a preliminary injunction, courts consider the factors set forth in *Dataphase Systems, Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Those factors include: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th

5

Cir. 2003). In a First Amendment case, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012).

## ARGUMENT

The Barber Shop Blackstone challenges the constitutionality of two separate provisions of Nebraska's Barber Act as applied to the facts and circumstances of this case. The first provision is Neb. Rev. Stat. § 71-201(5), which imposes a blanket ban on any person or company from using the title "barber" or "barber shop" without a state issued license. The second is Neb. Rev. Stat. § 71-201(6), which generally prohibits unlicensed companies from displaying a barber pole or images of a barber pole in advertising. Because both provisions infringe the bar's commercial free speech rights, the bar is entitled to immediate preliminary relief.

**I.    The bar is likely to succeed on the merits of its claims.**

A core purpose of the First Amendment is to "preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377 (1984) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969)). "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). Indeed, a consumer's concern "for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977).

6

Regulations of non-misleading commercial speech are generally subject to intermediate scrutiny, under which the government must show its regulation directly advances a substantial government interest and is no more "extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). More exacting scrutiny is required when the challenged law or regulation is "directed at certain content and is aimed at particular speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

Here, the challenged provisions of Nebraska's Barber Act are both speaker and content based. They are speaker-based because the laws only permit certain people— licensed barbers—to use the title "barber" and "barber shop" in their advertising, or to display barber poles or images of barber poles in advertising. Neb. Rev. Stat. § 71-201(5)–(6); *see Sorrell*, 564 U.S. at 564 (holding Vermont law was speaker based because it "disfavors specific speakers"). The laws are content based because they restrict the ability of all companies, except barber shops, to advertise using common, well-established names and imagery. In doing so, the laws "disavor[] marketing"— that is, "speech with a particular content." *Sorrell*, 564 U.S. at 564. Accordingly, the relevant provisions are subject to heightened scrutiny.

## A. The *Central Hudson* test.

Commercial speech restrictions that are content- or speaker-based are analyzed under the four-factor test articulated in *Central Hudson*, 447 U.S. 557. That test asks "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the

challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest. *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014) (citing *Cent. Hudson*, 447 U.S. at 566).

Significantly, in applying the *Central Hudson* test, "the Government bears the burden of identifying a substantial interest and justifying the challenged restriction." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999). This, in turn, requires evidence "that the harms [the government] recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 771. Without this requirement, "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." *Id.*

As discussed below, The Barber Shop Blackstone is likely to succeed on each of the four *Central Hudson* factors. As a threshold matter, the bar's use of the word "barber shop" in its title is not inherently, actually, or potentially misleading. Nor is its use of decorative barber polls. Further, while the Barber Board has a general interest in regulating the barbering profession, the challenged regulations do not have any applicability to the facts and circumstances of this case. Because the challenged provisions of Nebraska's Barber Act are more extensive than necessary to further the government's interest, a preliminary injunction should issue.

8

### 1.   Inherently, actually, or potentially misleading.

Under *Central Hudson*, "the threshold inquiry for assessing commercial speech restrictions is whether the speech at issue is misleading or concerns unlawful activity." *1-800-411-Pain Referral Serv.*, 744 F.3d at 1056. Commercial statements that are actually or inherently misleading do not enjoy the protections of the First Amendment. *Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 100 (1990). Whether speech is "inherently misleading" is a question of law. *1-800-411-Pain Referral Serv.*, 744 F.3d at 1056.

A statement is actually or inherently misleading when it "deceives or is inherently likely to deceive." *Express Oil Change, LLC v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019). Speech is inherently misleading when it leads to "fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct," *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 462, (1978), or imposes "deception and abuse . . . upon the consuming public," *In re R. M. J.*, 455 U.S. 191, 202 (1982). *Potentially* misleading statements, however, are safeguarded by the First Amendment. "States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive." *Id.*

Recent caselaw applying these standards is instructive. For example, *Express Oil Change* involved a Mississippi law regulating the use of the word "engineer" in advertising. 916 F.3d at 488. When a business with the trade name "Tire Engineers" opened, the State's Board of Licensure for Professional Engineers demanded the

9

name be changed, threatening fines for noncompliance. The Tire Engineers sued, seeking a declaratory judgment and related relief under the First and Fourteenth Amendments to the U.S. Constitution. *Id.* at 485.

The district court denied relief. Applying the *Central Hudson* test, the court determined that the business's use of the trade name "Tire Engineer" was inherently and actually misleading. "The overlap between Tire Engineers as a business name and actual tire engineers is obvious," the court wrote. *Express Oil Change, LLC. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, No. 3:16-CV-414-HTW-LRA, 2018 WL 9393061, at *8 (S.D. Miss. Feb. 2, 2018). "[The] use of the business name Tire Engineers is inherently likely to deceive Mississippi consumers to believe that the services performed at Tire Engineers are performed by tire engineers or under the supervision of tire engineers." *Id.* at *7 (citation modified).

The Fifth Circuit Court of Appeals reversed. It noted that the word "engineer" can mean "many things in different contexts" and is "certainly not limited to those professionals licensed by Mississippi to practice engineering." *Express Oil Change*, 916 F.3d at 490. The federal appellate court also noted the district court's failure to "account for the manner in which the Tire Engineers mark is transmitted—on the company website, which describes its automative services (not any professional engineering services), and at its retail stores, which appear like any other store that preforms automotive services." *Id.* Against this backdrop, the Fifth Circuit found that

10

the use of "Tire Engineers," at least at summary judgment, was "not inherently misleading under our precent." *Id.*[1]

In this case, like in *Express Oil Change*, context matters. Here, The Barber Shop Blackstone does not hold itself out as place of barbering. Just the opposite. The bar is unequivocal in advertising itself as a bar. (Ex. 1, Mike DiGiacomo Decl. ¶ 19.) This is true in social media posts—"Welcome to the Barber Shop, where every drink tells a story"—its website, and in the bar's general day-to-day operations, including its normal business hours. (*Id.* ¶ 14.) Further, the bar is intentionally discreet, without any front-facing signage. (*Id.* ¶¶ 19–20.) Thus, it is simply not possible for unsuspecting patrons to walk or drive by the bar and mistake it for a place of barbering. (*Id.* ¶ 28.) Simply put, nothing about the bar is actually or inherently misleading as to bring "deception and abuse . . . upon the consuming public." *In re R. M. J.*, 455 U.S. at 202.

Nor is the bar's speech actually or potentially misleading. Unless an advertisement is "inherently misleading on [its] face," the government must put forward proof of actual deception. *1-800-411-Pain Referral Serv.*, 744 F.3d at 1062; *see Heffner v. Murphy*, 745 F.3d 56, 91 (3d Cir. 2014) (striking down a funeral home regulation because "there is nothing in the record here to even suggest that the use of trade names in the funeral industry has either mislead or deceived the public"). This requirement, as noted above, ensures that states do not improperly restrict

---

[1] The Fifth Circuit affirmed the district court's finding of "potentially misleading," but it did so on a robust evidentiary record that is not yet present in this case. *Id.* at 492.

commercial speech "in the service of other objectives that could not themselves justify a burden on commercial expression." *Edenfield*, 507 U.S. at 771.

For many of the reasons discussed above, the Barber Board has not—and cannot—adduce any evidence that the bar's use of the name "The Barber Shop Blackstone" or its display of decorative barber poles results in actual deception. No one has ever mistaken the intentionally hidden bar for a barbershop, and there is no indication that anyone ever will. (Ex. 1, Mike DiGiacomo Decl. ¶ 28.) Further, even if someone was momentarily confused by the name, that confusion—without more— would be insufficient under the Supreme Court's governing standards. *In re R. M. J.*, 455 U.S. at 203 (regulator must show that the "advertising is subject to abuse"). Because the bar is likely to succeed on *Central Hudson's* "threshold question," the Court should proceed to step two. *1-800-411-Pain Referral Serv.,* 744 F.3d at 1056.

### 2.   Substantial governmental interest.

At step two, the Court assesses whether the challenged regulation "advances the Government's interest in a direct and material way." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 767). Here, the Nebraska Legislature, in enacting the Barber Act, declared "(1) The provisions and regulations of the Barber Act are enacted in the interest of public health, public safety, and the general welfare; and (2) the skilled trade of barbering and the operation of barber shops is affected with a public interest." Neb. Rev. Stat. § 71-225. Plaintiff does not dispute that these purported state interests, standing alone, advance a "substantial" governmental interest.

### 3. "Directly advances" the government's interest.

The third factor in the *Central Hudson* test asks whether the challenged regulation directly advances the government's asserted interest. *1-800-411-Pain Referral Serv.,* 744 F.3d at 1055. This factor requires the government to demonstrate that the "harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield,* 507 U.S. at 770–71. A challenged regulation "may not be sustained" when it "provides only ineffective or remote support for the government's purpose." *Greater New Orleans Broad. Ass'n, Inc.*, 527 U.S. at 188 (quoting *Central Hudson,* 447 U.S. at 564).

As alluded to above, the State has wide latitude to adopt licensure regulations in the public's interest. But a *per se* ban on all variations of the words "barber" and "barber shop" by unlicensed businesses like Plaintiff is a step too far. In other words, it is unclear how banning *every* unlicensed business from using the words "barber" or "barber shop" *regardless of context* directly advances the government's interests in a material way. Indeed, the evidence adduced so far shows that no person or entity has been deceived by The Barber Shop Blackstone's name or use of decorative barber poles, likely because the bar does not hold itself out as performing barbering services. (Ex. 1, Mike DiGiacomo Decl. ¶¶ 12, 28.) Thus, the Legislature's declaration that "the skilled trade of barbering and the operation of barber shops is affected with a public interest"—while potentially true—has no applicability to the facts and circumstances of this case. The Barber Board has not, and cannot, satisfy its evidentiary burden on the third factor of the *Central Hudson* test.

### 4. Narrowly drawn.

The final factor asks whether the regulation is no more extensive than necessary to further the government's interest. *1-800-411-Pain Referral Serv.,* 744 F.3d at 1055. To satisfy this requirement, the Barber Board must show that its challenged regulation is a "reasonable fit" for serving its stated interests, proportional to the interest served. *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 479–80 (1989). "[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418, n.13 (1993).

There is an obvious, less burdensome alternative to the Barber Act's *per se* restriction on commercial speech. Instead of banning *all* unlicensed persons and entities from using the title "barber" or "barber shop" in commerce, the law could— and should—apply only to those who hold themselves out as performing barbering or other personal grooming services. This is what the Legislature has done in related contexts. For example, the Cosmetology, Electrology, Esthetics, Nail Technology, and Body Art Practice Act makes it unlawful for any person or entity "to operate or advertise or hold oneself out as operating a cosmetology establishment in which any of the practices of cosmetology . . . are carried out." Neb. Rev. Stat. § 38-1058(3).

By including "hold oneself out as," the cosmetology statute distinguishes "between those who [the State] wish to regulate and those who should and must remain free from regulation by nature of the infrequency and informality of their . . .

14

transactions." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 692 (6th Cir. 2014). Because the Nebraska Legislature never intended to "regulate young girls who paint each others' nails at a slumber party," it tailored § 38-1058 proportionally to fit the interests served. *Id.*; *see Bd. of Trs. of State Univ. of New York*, 492 U.S. at 479–80.

Not so with the Barber Act. As discussed above, § 71-201(5) imposes a blanket, *per se* prohibition on any unlicensed person or entity using the title "barber" or "barber shop," irrespective of context. Thus, while children at the slumber party remain free from government regulation, private business owners who have no intention of cutting hair or performing barbering services receive letters threatening criminal and civil enforcement. (Ex. 1, Mike DiGiacomo Decl. ¶¶ 11, 32.) Because the challenged regulations are more extensive than necessary to further the government's interest, The Barber Shop Blackstone is likely to prevail on this component of its claim. Its motion should be granted.

\*      \*      \*

For the reasons discussed above, The Barber Shop Blackstone is likely to prevail under the four-factor test articulated in *Central Hudson*. The bar's use of the title "barber shop" and its decorative barber poles are not actually or inherently misleading, and the challenged regulations do not reasonably fit the Barber Board's stated interests. Accordingly, the bar is likely to succeed on the merits of its claims.

## II. The bar will suffer irreparable harm absent an injunction.

A party suffers irreparable harm when the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.

15

*Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Regarding fundamental constitutional rights, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140 (8th Cir. 1996) ("If [appellants] are correct and their First Amendment rights have been violated, this constitutes an irreparable harm."). This is particularly true where the constitutional violation is persistent and ongoing and cannot be remedied through an award of money damages. *Gen. Motors Corp.*, 563 F.3d at 319.

In this case, The Barber Board intend to enforce Neb. Rev. Stat. § 71-201(5)–(6) against the bar through criminal or civil sanctions. (Ex. 1, Mike DiGiacomo Decl. ¶ 32.) No form of relief will restore the deprivation of Plaintiff's constitutional right to commercial speech violated by this enforcement. Thus, because The Barber Shop Blackstone is likely to succeed on the merits of their First Amendment claim, and has no adequate remedy at law, this factor of the *Dataphase* analysis is satisfied. The bar's motion should be granted.

## III.    The balance of harms favors the bar.

In weighing a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or

16

withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). Here, the balance of harms tips decidedly toward the bar, which stands to suffer a deprivation of a vital constitutional right.

The defendants, on the other hand, face no injury from being required to abide by the First and Fourteenth Amendments. Nor can they point to any administrative burdens associated with allowing The Barber Shop Blackstone to maintain (1) the use of its trade name, or (2) the use of barber poles in bar decor. Because the balance of equities "generally favors the constitutionally-protected freedoms of expression," this *Dataphase* factor is satisfied. *Phelps-Roper*, 545 F.3d at 694.

## IV.   Preserving constitutional rights is always in the public's interest.

Finally, the Court must also weigh whether granting the injunction will benefit the public interest. In general, "it is always in the public interest to prevent the violation of a party's constitutional rights." *D.M. ex rel. Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)); *see Phelps-Roper*, 545 F.3d at 694 ("[T]he public is served by the preservation of constitutional rights."). Because the status quo interferes with the bar's fundamental right, an immediate injunction should be issued.

**CONCLUSION**

For the foregoing reasons, The Barber Shop Blackstone respectfully requests its Motion for Preliminary Injunction be granted.

17

DATED this 26th day of February, 2026.


*/s/ Daniel J. Gutman*
Daniel J. Gutman, #26039
Sydney L. Hayes #27051
University of Nebraska College of Law
First Amendment Clinic
Schmid Clinic Building
P.O. Box 830902
Lincoln, NE 68583-0902
dgutman2@unl.edu
shayes6@unl.edu
ATTORNEYS FOR PLAINTIFF
THE BARBERSHOP BLACKSTONE


## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), the undersigned certifies that this brief complies with the word limits set forth in NECivR 7.1(d). This brief contains 4,590 words, including all text, caption, headings, footnotes, and quotations, using the word counting function of Microsoft Word 2010.


/s/ Daniel J. Gutman

18