**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| OSTERIA SEGRETO, LLC d/b/a THE BARBER SHOP BLACKSTONE<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL HILGERS, Attorney General of Nebraska, in his official capacity, and TARA J. STERNS, JOSEPH A. SCOVILLE, AND COURTNEY A. DAUBENDIEK, in their official capacities as the members of the Nebraska Board of Barber Examiners<br><br>Defendants. | CASE NO. 8:26-CV-00065<br><br><br>**REPLY BRIEF IN SUPPORT OF THE BARBER SHOP BLACKSTONE'S MOTION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

This case is a challenge to Nebraska's sweeping prohibition on the use of the term "barber shop" or the display of a striped barber pole and to the Board of Barber Examiner's insistence that the Barber Shop Blackstone (a barbershop-themed bar that is open only at night and where no one has ever tried to get a haircut) must change its name on pain of criminal punishment. Plaintiff's opening brief established that this overbroad restriction on commercial speech violates the First Amendment, not least because no one could view the Barber Shop Blackstone's commercial speech in context and think it was an actual barbershop instead of what it is—a bar.

In response, the Barber Board effectively concedes that this is true. No one has actually been confused by the Barber Shop Blackstone's name. Instead, the Barber Board's crusade against the bar was fueled by a complaint from a licensed barber who thought "the whole theme of the place [was] so disrespectful to the trade." (Filing 13-8 at 112). The Barber Shop Blackstone may have offended a barber, but it hasn't misled a consumer. That means plaintiff's motion for a preliminary injunction should be granted.

To resist that conclusion, the Barber Board raises two arguments. First, it claims that trademark law is a trump that "generally prevails over the First Amendment," allowing the agency to civilly *and criminally* punish anyone who infringes its purported marks. (Filing 14 at 8). Alternatively, it argues that Plaintiff's use of the term "barber shop" and display of barber poles is actually and inherently misleading. As explained below, each argument fails, and Plaintiff's motion for preliminary injunction should be granted.

## ARGUMENT

### I. Trademark does not justify the challenged speech regulation.

Nebraska's Barber Act is rooted in economic protectionism. The Legislature created special protections for state-licensed barbers to the determinant of everyone else. *See* Neb. Rev. Stat. § 71-201(5)–(6). The Barber Board leans into these perverse objectives in its response brief, claiming that Plaintiff's barber-themed bar "dilutes the protection afforded to [barbers]." (Filing 14 at 11).

2

But according to the Barber Board, the statutory text and purpose are irrelevant because "trademark law generally prevails over the First Amendment." (*Id.* at 8). And because the Barber Board purportedly owns relevant barbering trademarks, the challenged provisions of state law are *per se* constitutional. As the Barber Board puts it, "[b]ecause Plaintiff is infringing on the Barber Board's trademarks, they have no First Amendment claim here." (*Id.* at 11–12).

The problems with this argument are many. First, Nebraska state trademark law does not trump the First Amendment. Time and again, the U.S. Supreme Court has made clear that when the government restricts speech—irrespective of form— the restrictions must satisfy First Amendment scrutiny. *Ibanez v. Florida Department of Business and Professional Regulation*, 512 U.S. 136 (1994) (professional licensing regulations subject to First Amendment scrutiny); *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, 496 U.S. 91 (1990) (same). Anything less would undermine core First Amendment protections.

Second, the Barber Board is wrong about the type of trademark it possesses. Throughout its brief, the Barber Board conflates "service marks" with "certification marks," claiming a "registered certification mark" while only presenting the court with evidence that it registered a "service mark." (*See* Filing 13-9). As explained below, a person or entity cannot possess both a service mark and certification mark in the same thing. Thus, even if trademark law applied, it wouldn't help the Barber Board here, because the agency doesn't sell any services, much less denote the services it sells by calling them a "barber shop" or by displaying a barber pole.

3

Third, to the extent the Barber Board has a registered trademark in either the "barber shop" title or the barber pole symbol, the marks are invalid. As discussed below, the Barber Board cannot claim ownership over words and symbols that existed centuries before the agency's formation—or, for that matter, before the State itself. Further, the terms "barber" and "barber shop" are generic and thus not afforded trademark protection, and the barber pole is a universal symbol which merely conveys information about the user's services. Accordingly, to the extent trademark law applies, the State's asserted interests are unenforceable. Plaintiff's motion for preliminary injunction should be granted.

## A. Trademark law is a red herring.

As noted throughout, this is a constitutional challenge to a statute, not a trademark dispute, so trademark law is irrelevant. It is enough for the Court to address the *actual* question presented: Whether specific provisions of Nebraska's Barber Act violate First Amendment commercial speech rights as applied to the facts and circumstances of this case. The answer to *this* question is yes.

And that question is all that matters. It is not accurate, as the Barber Board insists, that "trademark law generally prevails over the First Amendment." (Filing 14 at 8). The Board appears to believe that other state licensing boards litigating analogous cases consistently lose only because those states failed to label their speech restrictions "trademarks." So if Mississippi had insisted its statute was a "trademark" of the word "engineering," it would have won.[1] So too if Texas had thought to claim it

---

[1] It lost. *See Express Oil Change, LLC v. Miss. Bd. of Lic. for Prof. Eng'rs & Surveyors*, 916 F.3d 483 (5th Cir. 2019) (rejected state prohibition on using word "engineers").

4

had trademarked the phrase "interior designer."[2] And Florida could have prevailed had it only claimed a trademark in the word "psychologist."[3] Of course not. The label a state attaches to its commercial-speech restrictions doesn't change the First Amendment analysis, and none of the Board's cases say otherwise.

Consider *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023). The dispute there was between two private companies under the Lanham Act—a whiskey distiller suing a dog-toy manufacturer over a parodic chew toy. *Id.* at 145. The Supreme Court held that when an alleged infringer uses a mark as a designation of source for its own goods, the standard likelihood-of-confusion test governs as opposed to a heightened First Amendment threshold. *Id.* at 157. But the Court's analysis assumed a private-party Lanham Act framework in which there is no state action. Nothing in *Jack Daniel's* addressed—or could address—whether the government's own trademarks trump First Amendment protections.

Similarly, the Barber Board cites *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522 (1987) ("SFAA"). But that case *supports* the application of First Amendment scrutiny to exclusive naming or property rights. There, the Supreme Court analyzed Congress's statutory grant of exclusive rights in the word "Olympic" under the First Amendment. The Court noted that the US Olympic Committee (along with the International Olympic Committee) had used the term to promote the Olympic Games since 1896 and that their joint efforts had

---

[2] Texas lost, too. *Byrum v. Landreth* ,566 F.3d 442 (5th Cir. 2009); *see also Roberts v. Farrell*, 630 F. Supp. 2d 242 (D. Conn. 2009) (rejecting similar Connecticut restriction on unlicensed use of "interior designer").

[3] Florida, likewise, lost. *Abramson v. Gonzalez*, 949 F.2d 1567, 1576 (11th Cir. 1992).

imbued the term with a secondary meaning referring specifically to those Games. *Id.* at 532–34. Against that backdrop, preventing third parties from identifying their own events as "Olympic Games" was not "greater than necessary to further a substantial governmental interest." *Id.* at 537. Nothing in the decision supports the idea that the government can "simply pluck[] a generic word out of the English vocabulary and grant[] its exclusive use to" a chosen party. *Id.* at 534.

The implications of the Barber Board's arguments are obvious. If a state licensing board could immunize speech restrictions from First Amendment scrutiny by simply registering a service or certification mark with itself, no commercial speech restriction by any licensing board would be subject to constitutional review. What's more, Section 1983—which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution"—would take a backseat to purported ownership rights in words or phrases. This is not the law, and the Barber Board's arguments to the contrary should be rejected.

## B. The Barber Board does not have the marks it claims.

Throughout its brief, the Barber Board claims to possess certification marks in both the words "barber shop" and, separately, the barber pole symbol. At the same time, the Barber Boards only presents evidence that it has a registered *service* mark in the barber pole symbol. Both cannot be true. Service marks are the opposite of, and mutually exclusive from, certification marks.

A **service mark** is "any word, name, symbol, or device or any combination thereof used by a person to identify and distinguish the goods *of such person . . . .*"

6

Neb. Rev. Stat. § 87-128. As the definition suggests, service marks are personal to the owner. In other words, the owner of the mark is also the one who uses it. *See* Neb. Rev. Stat. § 87-130 (providing that those who "use[] a mark" may file an application for registration of that mark and that the application requires a statement that the "mark is in use."); Neb. Rev. Stat. § 87-128 ("Use means the bona fide use of a mark in the ordinary course of trade and not made merely to reserve a right in a mark.").

A **certification mark**, on the other hand, is used by third parties, not the mark's owner, to show or certify that their goods or services meet certain standards. Neb. Rev. Stat. § 87-301 (defining certification mark as one used "in connection with the goods or services of a person *other than the certifier*") (emphasis added). For example, "USDA Organic" is a certification mark owned by the USDA. While the USDA itself does not sell organic food or produce, third parties may use the certification mark on their products if they satisfy certain criteria. The mark, in turn, indicates to the consumer "geographic origin, material, mode of manufacture, quality, accuracy or other characteristics of the goods or services[.]" Neb. Rev. Stat. § 87-301. No one can possess a service mark, for personal use, and a certification mark for the same symbol. *See* 15 U.S.C. § 1064(5); McCarthy on Trademarks and Unfair Competition § 19:94 ("The Trademark Board held that if a designation is registered as a trademark or service mark, the exact same mark cannot also be registered as a certification mark[.]").

On page 2 of its brief (and elsewhere), the Barber Board claims to hold "a registered **certification mark** in the barber pole." (Filing 14 at 2) (emphasis added).

But it cites no evidence supporting this proposition, and an extensive search for the purported mark revealed nothing. At most, the Barber Board registered a **service mark** with the Nebraska Secretary of State. (*See* Filing 13-8). The Barber Board's confusion on this point is another reason to avoid the trademark issue entirely, as it has no bearing on the underlying constitutional dispute.

### C. The Barber Board lacks a valid, protectible mark.

Even if the Court reaches the Barber Board's trademark defense, the result is the same: Plaintiff is entitled to preliminary relief. Indeed, the Barber Board cannot satisfy the requirements of trademark infringement: (1) that it has a valid, protectible mark, and (2) there is a likelihood of confusion between its mark and the allegedly offending mark. *E.g.*, *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023).[4]

The Board's arguments fail at step one. As noted above, a service mark is personal to the owner—the owner must use the mark in commerce. *See* Neb. Rev. Stat. § 87-128, 87-130. This *itself* is fatal to the Barber Board's trademark claim because the agency does not provide goods or services or otherwise use the mark in commerce. Because the state regulatory body does not use its purported service marks "in the ordinary course of trade," its registration is invalid as a matter of law. Neb. Rev. Stat. § 87-128.

---

[4] While Defendants claim to possess state, not federal marks, federal trademark law is instructive. Neb. Rev. Stat. § 87-127 ("It is the intent of the Legislature that the Trademark Registration Act provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the federal Trademark Act of 1946, as amended. To that end, the construction given the federal act should be examined as persuasive authority for interpreting and construing the Trademark Registration Act.").

Additionally, the Barber Board cannot claim exclusive rights to the terms "barber" and "barber shop" in trademark, either through a registered mark or through the common law.[5] Nor can it claim ownership and exclusive use of the barber pole. As the agency admits, these purported marks existed centuries before the Barber Board—centuries before *Nebraska* itself. *See* Doc. 13-9 at 2 (stating the first use of the barber pole was in the "Fifth Century A.D."); *see also Barber*, Merriam-Webster, https://www.merriam- webster.com/dictionary/barber (stating that the first known use of the term "barber" was in the 14th Century); *Barbershop*, Merriam-Webster, https://www.merriam-webster.com/dictionary/barbershop (stating that the first known use of the term "barbershop" was in 1510). The Barber Board cannot claim ownership of terms and symbols that were in the public domain centuries ago. Indeed, the Board position here is almost exactly the one the Supreme Court pointedly rejected in *San Francisco Arts & Athletics*: that it can "simply pluck[] a generic word out of the English vocabulary and grant[] its exclusive use" to Nebraska-licensed barbers. 483 U.S. at 534.

Further, the Barber Board's claimed marks are not permitted under state or federal law because the marks are generic or, at best, descriptive. *See, e.g., Personal Fin. Co. of Lincoln v. Personal Loan Serv.*, 133 Neb. 373, 275 N.W. 324, 327 (1937) ("Courts are quite unanimous in declaring that descriptive terms or generic words are not susceptible of exclusive appropriation by any one, but may be used by all the world in an honestly descriptive or nondescriptive manner."); Neb. Rev. Stat. § 87-

---

[5] Defendants admit that the Barber Board does not have a registered mark for either term. Rather, they argue the Barber Board possesses a "common law certification mark."

136 (providing for the cancellation of a mark that "is or has become the generic name for the goods or services."); Neb. Rev. Stat. § 87-129 (prohibiting registration of marks that are merely descriptive). A mark is generic if it refers to the common name or nature of the goods or services. *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006). "A generic term does not identify the source of a product, but rather indicates the basic nature of the product." *Id.* (discussing that generic terms are not afforded trademark protection). Descriptive terms are those terms needed to describe all goods of a similar nature. *Id.* "Such a term describes the ingredients, characteristics, qualities, or other features of the product and may be used as a trademark only if it has acquired a secondary meaning." *Id.*

The terms "barber" and "barber shop" to describe barbers and barber shops themselves is merely generic and not afforded trademark protection.

Nor is a barber pole a protectible mark. The Nebraska Attorney General's Office recognized this in a 1988 letter to the Board. (Filing 13-9 at 4) (explaining that the Board's service mark was not consistent with its intended use, that it could apply for a collective mark, but that there would still be problems enforcing it). As the AGO explained, "[w]hen a word or symbol has been in the public domain for a period of time, it is no longer susceptible to exclusive appropriation." *Id.* Likewise, the National Association of Barber Boards, of which Nebraska's Barber Board is a member, attempted to register a certification mark for the barber pole with the USPTO. The registration was repeatedly rejected. The USPTO determined that the barber pole was "universal symbol" which merely conveys information about the

10

user's services. (Gutman Decl. Ex. B at 2–3; *Id.* Ex. D at 4–5).[6] Therefore, it could not function as a certification mark. *Id.*

In sum, the Barber Board has not—and cannot—establish a valid, protectible mark as required for trademark infringement. *H&R Block, Inc.*, 58 F.4th at 949.

The Barber Board's trademark arguments also fail at step two: proving a likelihood of confusion between its mark and the allegedly offending one. *Id.*

In assessing likelihood of confusion, courts weigh six factors: (1) the strength of the owner's mark, (2) the similarity of the owner's mark and the alleged infringer's mark, (3) the degree to which the products compete with each other, (4) the alleged infringer's intent to pass off its goods as those of the trademark owner, (5) incidents of actual confusion, and (6) the type of product, its cost and conditions of purchase. *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 947 (8th Cir. 2023). These factors tip decidedly in Plaintiff's favor.

The Barber Board's only evidence and argument on confusion is on the fifth factor, incidents of actual confusion. This evidence consists of a single affidavit— from a barber licensed by the barber board—claiming confusion as to whether the bar offered barbering services, and stating that she is "aware" that some of her clients were similarly confused.[7] But "even evidence of several isolated incidents of

---

[6] The Court can also take judicial notice of the USPTO records. *See, e.g.*, *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1019 n.2 (8th Cir. 2022) (taking judicial notice of USPTO filings); *Oliver v. Johanson*, 357 F. Supp. 3d 758, 768 n. 6 (W.D. Ark. 2018) ("The Court can take judicial notice of official records of administrative bodies, including USPTO records.").

[7] While the affiant can testify to her own state of mind, her comments regarding what others said or felt is inadmissible. It is speculative, lacks foundation, and is inadmissible hearsay. While the evidentiary rules are relaxed at this stage, this affiant's impression that others were confused could never be presented in an admissible form.

actual confusion occurring initially upon the creation of a potentially confusing mark is insufficient to demonstrate a likelihood of confusion." *H&R Block, Inc.,* 58 F.4th at 950. Defendants' standalone affidavit is insufficient.

Moreover, the Board's own filings in this case provide evidence that directly undermines the claim that any actual confusion occurred: The Board's sole affidavit comes from a licensed barber whose communications with the Board make clear she was not *confused* about whether the Barber Shop Blackstone was in fact a barber-themed bar. She was *offended* by the fact that it was a barber-themed bar and thought "the whole theme of the place [was] so disrespectful to the trade." (Filing 13-8 at 112). Consumer offense is not consumer confusion, and to hold otherwise would empower the government to squelch all manner of otherwise-protected speech.

*     *     *

Ultimately, trademark law does not supplant the First Amendment as the Barber Board suggests. Accordingly, the Court need not consider the agency's trademark defenses in deciding the pending motion. But even if the Court considers the merits, the same result applies. As discussed above, the Barber Board does not have the marks it claims it does, and even if it did, the marks are not valid and protectible. The Plaintiff's motion for preliminary injunction should be granted.

## II. The challenged regulation does not satisfy *Central Hudson*.

### A. Plaintiff's speech is not unlawful, inherently misleading, or actually misleading.

"A State may not . . . completely ban statements that are not actually or inherently misleading." *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,*

12

496 U.S. 91, 110 (1990) (plurality) (finding that the State may not carry out a total ban on speech that is only potentially misleading); *Id.* at 111 (J. Marshal & J. Brennan concurring) (agreeing with the plurality that states may not enact total bans of only potentially misleading speech if narrower limitations could be enacted). However, that is precisely what Neb. Rev. Stat. § 71-201 does. It is a blanket ban on using the titles barber and barber shop, displaying a barber pole, or using a barber pole in advertising without a barber license. Neb. Rev. Stat. § 71-201.

Here, the Barber Board has the burden to demonstrate that the speech is actually or inherently misleading or, separately, that the speech concerns unlawful activity. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) ("It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.") (citation modified). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 770–71.

The Barber Board asserts several justifications for stripping First Amendment protections from Plaintiff under the *Central Hudson* test. Each falls short of justifying the challenged speech ban.

***Speech Relating to Unlawful Activity.*** First, the Barber Board argues that Plaintiff's speech is unlawful. To support this, the Board points to its purported trademark. But, as discussed above, the Barber Board lacks a valid, protectible mark. And more fundamentally, this argument misapplies *Central Hudson*.

Plaintiff has found no caselaw holding that an alleged (or actual) trademark violation is sufficient to satisfy "unlawful activity" under *Central Hudson*. And the Barber Board cites none. This is because trademark law *itself* is government regulation of commercial speech and is generally subject to the *Central Hudson* test. *See Matal v. Tam*, 582 U.S. 218, 245 (2017) (finding that the Lanham Act's disparagement clause does not satisfy *Central Hudson* but leaving open the question of whether an even higher standard, strict scrutiny, should apply instead). At the risk of stating the obvious, the plaintiff in every commercial-speech case wants to engage in speech that is prohibited by law; if that alone meant that the speech failed the first prong of *Central Hudson*, then the Supreme Court's analysis in commercial-speech cases would be awfully short.

And they aren't. That's because *Central Hudson* permits government regulation of speech "relating to" or "concerning unlawful activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Commission of N.Y.*, 447 U.S. 557, 564 (1980) (citations modified); *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1056 (8th Cir. 2014). In other words, the focus of the inquiry is on whether the speech concerns, relates to, or promotes some *underlying* unlawful activity, such as the sale of illicit drugs. *See Casbah, Inc. v. Thone*, 651 F.2d 551, 564 (8th Cir. 1981) (upholding law that banned advertising promoting the sale of drug paraphernalia). Here, as the Barber Board admits, there is nothing unlawful about operating a speakeasy.

***Inherently Misleading.*** The Barber Board next contends that Plaintiff's speech is inherently misleading. It offers little argument on this point aside from bald

14

assertions and a claim that "the title 'barber shop' and the barber pole do not have multiple meanings—they are solely used as source identifiers of a licensed barber shop." (Filing 14 at 17). This is factually inaccurate and insufficient to meet the Barber's Board's requisite burden of proof.

Inherently misleading speech is speech that is "incapable of being presented in a way that is not deceptive." *Revo v. Disciplinary Bd. of the Supreme Ct. for N.M.*, 106 F.3d 929, 933 (10th Cir. 1997). Speech that can be corrected with a disclaimer or warning is not "inherently misleading." *See id.*; *Peel*, 496 U.S. at 110 (explaining that a state may consider requiring disclaimers to correct potentially misleading speech).

Nothing about Plaintiff's advertising, including the use of its name and the barber pole, is inherently misleading or deceptive. Plaintiff does not advertise barbering services, nor does it provide personal grooming services of any kind. Rather Plaintiff communicates a single, factual message—that it is a barber shop themed hidden bar. Its website and social media are consistent with this message. (Suppl. DiGiacomo Decl. Ex. B, C). And no hypothetical consumer is likely to wander into the bar believing they will receive a "dangerous straight-edge shave," as the Barber Board contends. (*See* Filing 14 at 23) (arguing that hypothetical consumers are "injured" because they might enter the walk into the bar under "false pretenses.").

What consumers *actually* see is a barber pole attached to a fence post in a back alley, below another bar. (*See id.* Ex. A (photos of the bar's entrance)). There are no other signs or identifying marks for the bar. The bar itself is behind a black, opaque, unmarked door approximately 30 feet from the barber pole. (*Id.* ¶ 4). The Barber

15

Board's argument that a consumer will wander into the alley and through an unmarked door expecting a shave, thus suffering some harm, is make-believe. (Filing 14 at 2). It simply defies reality.

The Barber Board also harps about the bar's name and logo, but analyzes them in a vacuum, rather than in the context in which they are used. The name—the Barber Shop Blackstone—and logo are only displayed online and inside the bar. (Suppl. DiGiacomo Decl. ¶ 5). They are not visible from the street or alley. (*Id.*; *id.* Ex. A). And Plaintiff's online presence conveys a singular message—the establishment is a bar. (*Id.* Ex. B, C).

And neither the term "barber shop" nor a barber pole are synonymous with *state licensed* barber shops. Both the term and the pole predate state licensing of barbers by centuries. In fact, they predate *Nebraska*. Common dictionary definitions of the term "barber" make no reference to licensing regimes. *See Barber*, Merriam-Webster, https://www.merriam-webster.com/dictionary/barber. And the Barber Board presents no evidence that consumers associate the term with the possession of a license from the State of Nebraska. Nor can it: "barber shop" has multiple meanings, including "a barber's place of business" *and* "a style of unaccompanied group singing of popular songs marked by highly conventionalized close harmony." *Barbershop*, Merriam-Webster, https://www.merriam-webster.com/dictionary/barbershop. Jailing an a cappella ensemble for calling itself a "barber shop quartet" hardly protects consumers.

As to the barber pole, Nebraska law provides that a "[b]arber pole shall mean a cylinder or pole with alternating stripes of red, white, and blue *or any combination of them* which run diagonally along the length of the cylinder or pole." Neb. Rev. Stat. § 71-202.01 (emphasis added). This broad definition, which includes *any combination* of listed colors, encompasses red, white, and blue cylinders and poles. It also encompasses blue and white poles (with no red), blue and red poles (with no white), and red and white poles (with no blue). (*See* Filing 13-1) (explaining that "red-and-white striped poles . . . became intrinsically associated with barbering). Of course, the latter also conjures a classic image that has nothing to do with barbers—candy canes and poles in Santa's workshop. According to the plain language of the statute those are barber poles and cannot be lawfully displayed without a license.

The challenged statute does not target inherently misleading speech; it sweeps broadly to prohibit truthful speech and the use of classic symbols alike.

***Actually Misleading Speech.*** Lastly, the Barber Board claims that Plaintiff's speech is actually misleading. Again, it relies on a single affidavit from a barber licensed by the Barber Board claiming confusion. (Filing 13-6). As with trademark claims, an isolated incident or even several isolated incidents of confusion are insufficient to prove that regulated speech is actually misleading. *See Callman on Unfair Competition, Trademarks and Monopolies* § 22:61 & nn.3, 10–11 (4th ed.) (noting that in *Friedman v. Rogers*, 440 U.S. 1 (1979), the Supreme Court upheld a trade name ban only where the state "marshalled massive evidence of public deception," and that absent such a record, "similar restrictions on other professions

17

have been held unconstitutional.") (citing *Express Oil Change, LLC v. Miss. Bd. of Licensure for Prof. Engineers & Surveyors*, 916 F.3d 483 (5th Cir. 2019); *Heffner v. Murphy*, 745 F.3d 56 (3d. Cir. 2014).

This makes sense. If all the state had to do was marshal a single, self-serving affidavit of an individual who is part of profession benefiting from the ban proclaiming confusion, it could justify almost any speech regulation under *Central Hudson. See Ibanez v. Florida Dept. of Bus. & Prof'l Reg.*, 512 U.S. 136, 143 (1994) (explaining that the state's burden to justify commercial speech regulation "is not slight"); *Edenfield v. Fane*, 507 U.S. 761, 770–71 ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real . . . Without this requirement, a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.").

*Express Oil Change, LLC*, is instructive. There, the government offered as evidence a telephonic survey finding that "sixty-six percent of the respondents expected that Tire Engineers has professional engineers on staff, and fifty-eight percent of respondents expected Tire Engineers to use engineers to service tires." 916 F.3d 483, 489 (5th Cir. 2019) (citation modified). Even this was insufficient to support a finding that the challenged speech was actually or inherently misleading. So too, a single affidavit is insufficient here.

In any event, Ms. Garrison's affidavit lacks probative value. Ms. Garrison has always been aware that the Barber Shop Blackstone is a speakeasy—not a barber

18

shop. She said so in her email to the Board: "This whole bloody concept has irritated me so much with the barber pole in the speak easy." (Filing 13-8 at 1). And minutes before she submitted the "complaint" to the Barber Board, she emailed this to Plaintiff's owner:

> Have you notified State barber boards on your new 'themed' barber shop speak easy?

> You are not allowed to have a barber pole in there if you're not offering barber services by someone licensed. Bar or not. Also, alcohol isn't even allowed in a traditional barber shop and will get shut down immediately the only reason scissors and Scotch weirdly works because it's a separate building.

> Please do your research on barbering before making it into a cool fad because it's a thing right now. You are completely disregarding and disrespecting barbers who have worked so hard in our trade to get quick money making by doing generic and tasteful takes on such a respected trade. Not even bothering to reach out to state barber boards to approve such nonsense because Ken wouldn't allow a pole in a business especially just a bar.

(Suppl. DiGiacomo Decl. Ex. D). Ms. Garrison is apparently upset by the bar, and feels it disrespects her profession, but she is not misled. In her own words, she understands the Barber Shop Blackstone is "just a bar."[8] (*Id.*).

In sum, the Barber Board falls well short of satisfying its burden. It fails to demonstrate that the disputed speech is actually misleading.

---

[8] To the extent Defendants rely on a single Facebook post advertising "special guest barbers" at the bar's grand opening party, this reference appears after stating "The Barber Shop, *Blackstone's newest bar,* is hosting their grand opening . . . ." (Filing 13-8 at 6) (emphasis added). It also appears alongside "drink specials," "secret menu," and "5 cabinet giveaways." This context demonstrates that it was a themed bar event, not an ad for barbering services. Nor could it be understood as an ad for barbering services by any reasonable consumer.

**B. The challenged speech regulation is not narrowly drawn and does not directly advance any substantial governmental interest.**

While *Peel* should end the analysis—states cannot completely ban speech that is not actually or inherently misleading—Plaintiff briefly addresses the Barber Board's arguments on narrow tailoring.

The Barber Board contends that the "Barber Act only prohibits using the 'title of barber or barber shop' in a manner to indicate barbering services are provided." (Filing 14 at 22; *id.* at 23 ("The restrictions only reach unlicensed businesses that indicate they offer barbering services.")). This is inaccurate.

The plain language of the Act imposes a blanket ban on using the title barber or barber shop without a license. It states, "[n]o person, partnership, limited liability company, or corporation shall use the title of barber or barber shop *or* indicate in any way that such a person or entity offers barbering services unless such person or entity is licensed pursuant to the act." Neb. Rev. Stat. § 71-201(5); *see also Mann v. Mann*, 316 Neb. 910, 925, 7 N.W.3d 845, 859 (2024) ("The word 'or,' when used properly, is disjunctive."). It similarly imposes a blanket ban on displaying a barber pole or using it in advertising without a license. Neb. Rev. Stat. § 71-201(6). This is undisputed.

This sweepingly broad statute is not "narrowly drawn." Quite the opposite. Barber shop quartets cannot call themselves a "barber shop quartet" without running afoul of state law. The definition of barber pole is so broad that it encompasses traditional Christmas displays. And, like here, it applies to businesses that have nothing to do with cutting hair, shaving, personal grooming, or the regulated industry. This does not advance Defendants' purported goals.

20

Defendants do not attempt to argue why a narrower restriction would not be appropriate. In fact, their argument, while misinterpreting the actual scope of the statute, suggests one alternative. The statute could bar businesses that provide hair cutting and other personal grooming services from holding themselves out as state licensed barbers. That would achieve the state's purported interests. (*See* Filing 14 at 19–20) (arguing that the state has an interest in "ensuring that if a business offers services similar to barbering, consumers are not confused or deceived about whether the services are provided under the requirements of the Barber Act.").

It is not hard to imagine other narrower alternatives.

\*     \*     \*

Defendants have not met their burden under *Central Hudson* and cannot justify the sweeping speech ban they have threatened to enforce against The Barbershop Blackstone. In defense of the ban, they offer little more than a single affidavit of a disgruntled barber, a general desire to protect non-existent or unenforceable trademarks, and bald assertions that speech is misleading and that the law is "narrow." This falls well short of the government's burden. The Barber Shop Blackstone is, therefore, likely to succeed on the merits of its § 1983 claim.

## CONCLUSION

For the foregoing reasons, The Barber Shop Blackstone respectfully requests its Motion for Preliminary Injunction be granted.

DATED this 30th day of March, 2026.

THE BARBERSHOP BLACKSTONE

*/s/ Daniel J. Gutman*
Daniel J. Gutman, #26039
Sydney L. Hayes #27051
University of Nebraska College of Law
First Amendment Clinic
Schmid Clinic Building
P.O. Box 830902
Lincoln, NE 68583-0902
dgutman2@unl.edu
shayes6@unl.edu
ATTORNEYS FOR PLAINTIFF
THE BARBERSHOP BLACKSTONE

23

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(4), the undersigned certifies that this brief complies with the word limits set forth in NECivR 7.1(d). This brief contains 5,925 words, including all text, caption, headings, footnotes, and quotations, using the word counting function of Microsoft Word 2010. No generative artificial intelligence program was used in drafting this document.

/s/ *Daniel J. Gutman*